UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

THOMAS PAUL HULL,

                    Plaintiff,                    Case No. 1:11-cv-623

v.                                               Honorable Paul L. Maloney

UNKNOWN BAKER et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. §§ 1983, 1985 and 1986.  The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed against Defendants Berghuis, Armstrong, Chaffee and Unknown Party ("John Doe")  for failure to state a claim.  The Court will order service of the complaint against Defendants Baker, Lewis and Minnerick.

## Background

Plaintiff is a state prisoner incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Chippewa Correctional Facility, though the events giving rise to his complaint occurred while he was housed at the Earnest C. Brooks Correctional Facility (LRF). Plaintiff sues the following employees of LRF:  Sergeant "Unknown" Baker; Grievance Coordinator J. Minnerick; Assistant Resident Unit Supervisor (ARUS) Djuana Lewis; Warden Mary K. Berghuis; Transfer Coordinator Curtis Chafee; and an unknown party (named as "John Doe") who performed the duties of Transfer Coordinator at LRF at the time of the events in the complaint. Finally, Plaintiff sues Investigator James Armstrong, who reviews prisoner grievances from the central office of the MDOC in Lansing, Michigan.

Plaintiff brings this action under 42 U.S.C. §§ 1983, 1985 and 1986.  In short, Plaintiff contends that prison officials violated his rights when they:  (1) confiscated and destroyed his property; (2) placed him on modified grievance access; and (3) transferred him to another prison.  Plaintiff seeks declaratory relief, injunctive relief, and damages.

### 1.      Confiscation / destruction of Plaintiff's property

According to the complaint, in January of 2008, Plaintiff submitted an order for the purchase of guitar strings, guitar picks, and a guitar strap (hereinafter "Purchased Property").  In February, Plaintiff sent a kite to Defendant Sergeant Baker complaining about a delay in receiving the Purchased Property.  On February 25, 2008, Plaintiff was instructed to take his guitar to the property room, which is the standard procedure for exchanging old musical equipment for new equipment.  Upon arrival, Sergeant Baker advised Plaintiff that he had received the kite.  Baker told Plaintiff, "'[D]idn't I throw your guitar away in [2006] after you filed a grievance about it. . . .  You should know not to cry about property.'" (*Id.* at ¶ 18.)  Baker then confiscated Plaintiff's property,

which included an electric guitar, a guitar case, and a guitar strap (hereinafter "Confiscated Property"). Plaintiff asked Baker about the Purchased Property, but Baker said he was going to keep it.

On March 11, Plaintiff filed a grievance complaining that Defendant Baker failed to provide a timely Contraband Removal Record and Notice of Intent to conduct an administrative hearing regarding the Confiscated Property (hereinafter "Grievance A").[1] Defendant Minnerick interviewed Plaintiff regarding Grievance A, and he told Plaintiff, "'You know, that's why this whole thing started . . . because you sent Baker a kite complaining about not being called out to get that property . . . . If you want any chance of getting your guitar back you better not complain or file any more grievances like this.'" (Compl. ¶ 20.) On March 20, ARUS Lewis instructed another officer to provide Plaintiff with a copy of the contraband charge and the Notice of Intent. Warden Berghuis later denied Grievance A at step II of the grievance process.

On March 25, Lewis held an administrative hearing and determined that the Confiscated Property was contraband and that Plaintiff would not be allowed to possess it. (*See* 02/26/2008 Admin. Hr'g Rep., docket #1-1, Page ID#62.) Lewis noted that prison staff "regularly engrave property," but the prisoner number on Plaintiff's guitar had been scratched onto the surface. (*See id*.) Lewis reviewed the evidence put forth by Plaintiff and determined that Plaintiff could not sustain his claim to the Confiscated Property.[2] Plaintiff appealed Lewis's decision, complaining that

---

[1]*See* Compl. ¶ 19.

[2]Plaintiff claimed that he had received the guitar across the front desk at another institution, but Lewis confirmed that instruments were never accepted in that fashion at that institution. In addition, Plaintiff offered a prisoner receipt form showing receipt of the guitar in 1994, but Lewis determined that the receipt was forged because that particular receipt form was not in use in 1994. Finally, Plaintiff offered other evidence that did not refer to the guitar at issue.

- 3 -

the hearing lacked due process (hereinafter "Grievance B").[3]  Defendants Minnerick, Berghuis, and Armstrong denied Grievance B at steps I, II, and III of the grievance process, respectively.

On April 17, Plaintiff sent a letter to Lewis requesting that she send the guitar to his sister.  Minnerick later indicated that he would destroy Plaintiff's guitar after Plaintiff exhausted the appeal process because, according to Minnerick, Plaintiff did not tell Lewis how he wanted to dispose of it.

On April 18, Plaintiff filed grievances complaining that, in connection with the contraband hearing, Baker improperly submitted as evidence a 2006 grievance that should have been expunged from Plaintiff's prison files (hereinafter "Grievance C"[4] and "Grievance D,"[5] respectively).  Defendant Minnerick rejected Grievances C and D at step I because they were duplicative of Grievance A, of a 2006 grievance, and of each other.  Defendants Berghuis and Armstrong rejected Grievances C and D at steps II and III, respectively.

On July 8, Baker told Plaintiff that he had destroyed the Confiscated Property.  Baker also informed Plaintiff that the Purchased Property would have to be sent out of the facility.  Plaintiff asked Baker to return the property to the purchaser for a refund, but Baker replied that the vendor would not accept a return after forty-five days from purchase.  When Plaintiff requested the property, Baker refused.  After their meeting, Baker wrote a memorandum falsely stating that Plaintiff refused to indicate his preference for the disposition of the Purchased Property.  Baker

---

[3]*See* Compl. ¶ 27.  Plaintiff contends that Lewis  treated all of Plaintiff's evidence differently from the evidence offered by Baker; improperly shifted the burden of proof to Plaintiff; "suppressed material evidence favorable to the Plaintiff"; and "made numerous false and distorted allegations" in the hearing report, including a statement that Plaintiff had provided forged evidence.  (Compl. ¶ 25.)

[4]*See* Compl. ¶ 33.

[5]*See* Compl. ¶ 34.

- 4 -

indicated in the memorandum that he would dispose of the property within ten days if Plaintiff did not provide a means of having the property removed from the facility.

On July 15, Plaintiff filed two more grievances. One grievance asserted that Baker's destruction of the Confiscated Property was premature because Plaintiff's administrative appeals were still pending and no determination had been made that the guitar case and guitar strap were contraband (hereinafter "Grievance E").[6]  The other grievance complained that Baker's threat to destroy the Purchased Property was premature because no determination had been made it was contraband (hereinafter "Grievance F").[7]  Defendants Minnerick, Berghuis and Armstrong denied Grievance E at steps I, II and III, respectively.  Minnerick denied Grievance F at step I.  As part of the step I response, Minnerick attached a Notice of Package Mail Rejection issued on February 25, 2008, and a property disposition sheet prepared by Baker.  Plaintiff claims that the foregoing documents were falsified by Baker.  Berghuis and Armstrong denied Grievance F at steps II and III, respectively.

Plaintiff believes that Defendant Baker destroyed the Purchased Property on or about July 19.

On August 26, Lewis held an administrative hearing regarding the disposition of the Purchased Property.  When Plaintiff complained that he had not received timely notice of the hearing, Lewis allegedly responded "'Your[sic] not gettin' nothin.  If you didn't file grievances you'd get your property.'" (Compl. ¶ 61.)  According to the hearing report, Lewis determined that, because Plaintiff did not own a guitar, he was not permitted own guitar accessories.  (Compl., Ex.

---

[6]*See* Compl. ¶ 52.

[7]*See* Compl. ¶ 53.

1, Page ID#109.)  The report notified Plaintiff that the Purchased Property would be destroyed within thirty days unless it was mailed out of the institution at Plaintiff's expense or picked up by a person designated by Plaintiff.  (*Id.*)

On August 28, Plaintiff filed a grievance complaining of poor living conditions due to inadequate ventilation of air (hereinafter "Grievance G").[8]  Minnerick denied the grievance at step I.

On August 31, Plaintiff appealed the determination of the administrative hearing regarding the Purchased Property (hereinafter "Grievance H").[9]  Minnerick denied the appeal at step I and Berghuis denied it at step II.

### 2. *Placement on modified grievance access*

After Grievances B, C, and D were rejected, Berghuis notified Plaintiff that he could be placed on "modified access"[10] for filing duplicative grievances.  Minnerick subsequently recommended that Plaintiff be placed on modified access.  Berghuis approved the recommendation and placed Plaintiff on modified access for ninety days, from September 25 to December 23, 2008.

On September 29, Plaintiff sent a letter to Minnerick requesting permission to file a grievance, but no response was received.  On October 2, Plaintiff requested permission from Minnerick to appeal Grievance H to step III, but Plaintiff did not receive permission.

---

[8]*See* Compl. ¶ 62.

[9]*See* Compl. ¶ 65.

[10]Under MDOC policy, a prisoner may be placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language ... or [are] unfounded ...." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH. (eff. July 9, 2007). The modified access period typically lasts for ninety days, but it may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ KK.

- 6 -

3.      *Prison transfer*

On October 10, 2008, Plaintiff was transferred to Lakeland Correctional Facility (LCF).  Plaintiff alleges that several harms resulted from his transfer.

First, Plaintiff's medical care was delayed or impeded.  When Plaintiff was seen by a doctor in September of 2009, he was diagnosed with an abnormal heart rhythm that his doctor thought might be caused by medication that Plaintiff had been taking.  His doctor switched him to another medication, Coumadin.  In addition, while Plaintiff was incarcerated at LRF, a dentist had told him that a tooth needed to be filled.  When Plaintiff was seen by a dentist again in October of 2010, he was told that the tooth had decayed beyond repair and needed to be extracted.

Second, as a result of his transfer to LCF, Plaintiff was deprived of his job at LRF, which would have helped him to pay attorney fees and court costs to pursue legal redress of grievances, including one grievance that effects his judgment of sentence.

Plaintiff claims that Defendants deprived him of property without due process, violated his right to equal protection, impeded his right to redress of grievances, impaired his right of access to the courts, and retaliated against him for engaging in conduct protected by the First Amendment.  Plaintiff also contends that Defendants engaged in a conspiracy to violate his rights.

**Discussion**

I.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

- 7 -

more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.  Due Process

Plaintiff claims that Defendants confiscated and/or destroyed his personal property in violation of his right to due process under the Fourteenth Amendment.  "Due process is a flexible concept that generally requires some type of hearing prior to a state's deprivation of an individual's liberty or property."  *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991) (citing *Zinermon v. Burch*, 110 S.Ct. 975, 984 (1990)).

The complaint indicates that Plaintiff received notice and a hearing before Defendants disposed of the Confiscated Property.  (*See* Compl. ¶¶ 21, 24.)  Plaintiff also received a separate hearing from Defendant Lewis with respect to the Purchased Property.  (*See* Compl. ¶ 61.)  Plaintiff contends that he did not receive notice before the latter hearing, though he did receive notice because he alleges that Baker told him several months prior to the hearing that the Purchased Property would be confiscated.  (*See* Compl. ¶ 18.)

Plaintiff contends that Lewis, the hearings officer, improperly shifted the burden of proof to Plaintiff to provide evidence that he owned the Confiscated Property, though prison policy requires that prison officials bear the burden of proof to show that the property in question is not owned, or was not lawfully acquired, by the prisoner.  The hearing report is attached to the complaint and may be considered by the Court in evaluating whether Plaintiff states a claim.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (noting that when ruling on a Rule 12(b)(6) motion to dismiss, a court may consider "the Complaint and any exhibits attached thereto"); *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the dismissal standard for Rule 12(b)(6) governs dismissals for failure to state

a claim under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)).  The report indicates that Lewis did not shift the burden of proof to Plaintiff; rather, she relied on evidence that the guitar lacked proper indicia of ownership, and then determined whether Plaintiff's evidence could support his claim to it.  Thus, it appears that Plaintiff received the minimum process to which he was entitled, i.e., notice and an opportunity to be heard.  *See Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972) (holding that procedural due process is satisfied by giving an individual notice and an opportunity to be heard before the government deprives him of his possessions).

Even if the process provided to Plaintiff was not adequate, however, Plaintiff's due-process claim would be barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  *Id.* at 537.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Id.*  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).

Plaintiff asserts that the deprivation of his property was "not random and unauthorized, but rather [was] deliberate, intentional, the result of the MDOC's policy, custom or practices . . . ."  (Compl. ¶ 87.)  At the same time, however, Plaintiff claims that Defendants "violated numerous prison Rules and Regulations in dealing with Plaintiff."  (Compl. ¶ 27.) Plaintiff claims, for instance, that Defendants improperly considered expunged prison records when determining whether the Confiscated Property was contraband (*id.* at ¶ 23), improperly shifted the

burden of proof to Plaintiff (*id.* at ¶ 25), made false allegations(*id.*), suppressed evidence (*id.*), conspired to dispossess Plaintiff of his property (*id.*), failed to ensure a fair and just hearing (*id.* at ¶ 26), and deprived him of his property "maliciously and subjectively motivated by . . . desire and bias . . . to retaliate against Plaintiff" (*id.* at ¶ 87).  Thus, it is clear that Plaintiff alleges an unauthorized deprivation of property and, therefore, *Parratt* applies to his claim.  *See Kennedy v. Bonevelle*, 413 F. App'x 836, 840 (6th Cir. 2011) (applying *Parratt* where the pleadings alleged that prison officials took unauthorized action in connection with a property deprivation hearing).

      Because *Parratt* applies, Plaintiff must plead and prove the inadequacy of state post-deprivation remedies.  *See Kennedy*, 413 F. App'x at 840; *Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).  Plaintiff's allegations fail to satisfy this pleading requirement.

      Indeed, there are several post-deprivation remedies that may be available to Plaintiff.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B.  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  Moreover, the Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See*

*Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why any of the foregoing procedures would not afford him complete relief for the deprivation of his personal property.  Therefore, he fails to state a due-process claim.

### B.    Equal Protection

Plaintiff asserts throughout the complaint that Defendants violated his right to equal protection.  Construing the complaint liberally, Plaintiff apparently contends that the confiscation of his property by Defendant Baker, the rejection of his grievances by Defendants Minnerick, Armstrong and Berghuis, and the administrative hearing conducted by Defendant Lewis, each violated his right to equal protection.  The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. AMEND. XIV, § 1.  When governmental action adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest."  *City of Cleburne*, 473 U.S. 432, 440 (1985). To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him in relation to similarly situated others. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Such discriminatory purpose must be a motivating factor in the actions of the defendants.  *Id.* at 265-66.

Here, Plaintiff fails to allege facts that would suggest that he was subjected to purposeful discrimination by any Defendant.  His allegations of discrimination are wholly conclusory.  Indeed, he fails to identify any similarly-situated inmates who were treated differently.  Plaintiff's mere recitation that he has been denied his right to equal protection is not enough to state

- 12 -

a claim. *See Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### C.    Right of redress

Plaintiff asserts that Defendants denied him his right to redress under the First Amendment by denying his grievances or hindering his access to the grievance procedure. There is, however, is no constitutional right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Overholt v. Unibase Data Entry, Inc.,* No 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994). Moreover, Michigan law does not create a protected interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf,* No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

To the extent Plaintiff contends that Defendants violated prison policies or procedures, section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown,* 27 F.3d 1162, 1166 (6th Cir. 1994).Moreover, section 1983 does not provide redress for a violation of state law, *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown,* 27 F.3d 1162, 1166 (6th Cir. 1994), or prison policies, *Laney v. Farley,* 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland,* 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem,* 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett,* No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable

liberty interest).  Therefore, Defendants' conduct in connection with the prison grievance procedure does not, in itself, state a viable § 1983 claim.

### D.      Right of access to the courts

Plaintiff alleges that Defendants' conduct denied him his right of access to the courts. Prisoners do have a constitutionally-protected right of access to the courts under the First and Fourteenth Amendments, *see Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), but Plaintiff fails to identify any conduct impairing his right of access to the Courts.  Assuming Defendants improperly denied Plaintiff's grievances or restricted his access to the grievance system, that conduct would not prevent Plaintiff from bringing a claim in court.  Although the PLRA requires a prisoner to exhaust prison grievance remedies before bringing a § 1983 claim, that requirement only applies to "available" remedies.  S*ee* 42 U.S.C. § 1997e(a).  Thus, if Defendants denied Plaintiff access to the grievance process, that process would not be "available" to him, and its exhaustion would not be required under § 1997e(a).  In short, Defendants' conduct in connection with the grievance procedure could not have impaired Plaintiff's ability to access the courts.

In addition, Plaintiff has not stated an access-to-courts claim because he has not sufficiently alleged any injury as a result of Defendants' conduct.  A plaintiff pursuing an access-to-the-courts claim must plead actual injury to pending or contemplated litigation.  *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999).  "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair

- 14 -

notice to a defendant." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).[11]  Because Plaintiff has

failed to plead injury to a pending or contemplated claim, he has not stated a viable access-to-courts

claim.

### E.      Retaliation

Plaintiff contends that Defendants retaliated against him in violation of the First

Amendment by depriving him of his property, placing him on modified access, and transferring him

to another prison.   Retaliation based upon a prisoner's exercise of his or her constitutional rights

violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was

engaged in protected conduct; (2) an adverse action was taken against him that would deter a person

of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at

least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be

able to prove that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001)

(citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.      Deprivation of property

Plaintiff alleges that Defendants Baker, Lewis and Minnerick confiscated his property

after he complained to Baker about receiving the Purchased Property and filed grievances regarding

Baker's conduct and the conduct of other Defendants.  At this stage of the proceedings, the Court

---

[11]To the extent Plaintiff asserts that his prison transfer and subsequent loss of his prison job, rather than the denial of his grievances, impeded his access to the Courts by preventing him from paying an attorney, he has not adequately pleaded an access-to-the-courts claim because he has not identified the "underlying cause of action and its lost remedy."  *See Christopher*, 536 U.S. at 416.

concludes that Plaintiff's allegations are sufficient to warrant service of Plaintiff's retaliation claim against Defendants Lewis, Baker, and Minnerick.

The remaining Defendants were not sufficiently involved in the deprivation of Plaintiff's property to be liable for a retaliation claim.  There is no allegation that Defendants Chaffee or "John Doe," the transfer coordinators, had any involvement in the matter.  Defendants Berghuis and Armstrong were involved only to the extent that they denied Plaintiff's grievances, but they are not liable under § 1983 merely because they learned of, and failed to act upon, information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Furthermore, Defendants Berghuis and Armstrong are not liable merely because of their supervisory authority over other Defendants.  *See* Section I.G, *infra*.

### 2.    Modified grievance access / denial of grievances

Plaintiff also contends that Defendants placed him on modified grievance access and denied his grievances in retaliation for protected conduct.  The Sixth Circuit repeatedly has held that placement on modified access is not sufficiently adverse to deter an ordinary person from engaging in protected conduct.  *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Davis v. Martin*, 52 F. App'x 717, 718 (6th Cir. 2002); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. 2001).  Modified access merely requires the prisoner to obtain permission from the grievance coordinator before filing a grievance.  *See Kennedy*, 20 F. App'x at 471.  Thus, it ensures that the prisoner will "file grievances that compl[y] with prison regulations," thereby allowing him to engage in the precise conduct that he wishes to pursue.  *Davis*, 52 F. App'x at 718.  Moreover, modified access does not prevent a prisoner from seeking redress in federal court.  *See* Section II.D, *supra*; *accord Kennedy*, 20 F. App'x at 470.  Similarly, the denial of grievances is not sufficiently adverse

- 16 -

to deter a prisoner from engaging in protected conduct; it does not prevent a prisoner from filing other grievances or from seeking redress in court.

3. <u>Prison transfer</u>

Plaintiff further asserts that Defendants arranged to have him transferred to another facility in retaliation for his filing of grievances. In some circumstances, a prison transfer can be an adverse action. *See Hill*, 630 F.3d at 474. Nevertheless, Plaintiff's sweeping allegation against the foregoing Defendants is insufficient to state a claim, for several reasons.

First, Plaintiff fails to identify any specific conduct by any of the Defendants with respect to his transfer, much less conduct indicative of retaliation. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *see also Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Second, Plaintiff merely asserts the fact of malicious intent with respect to the prison transfer; he fails to allege any facts supporting a plausible inference of retaliatory intent. "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be

- 17 -

sufficient to state . . . a claim under § 1983.'" *Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)).  Even if the Court assumes that Defendants "John Doe" and Chaffee, the prison transfer coordinators, had a role in approving Plaintiff's transfer, there are no allegations regarding Chaffee or John Doe that would support an inference of retaliatory intent on their part.

Even assuming Plaintiff had identified conduct specific to each Defendant, there is only one fact that could suggest a retaliatory motive for the transfer, and that is its timing.  The transfer occurred in October, approximately a week after Plaintiff continued to pursue grievances regarding the confiscation of his property.  (*See* Compl. ¶¶ 78, 80.)  Without more, however, mere temporal proximity between protected conduct and an adverse action is not sufficient to support an inference of retaliation.  *Skinner v. Bolden*, 89 F. App'x 579, 579–80 (6th Cir. 2004); *Campbell*, 250 F.3d at 1038; *see Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010) (recognizing that "'extremely close'" temporal proximity could permit an inference of retaliatory motive, but that "'often evidence in addition to temporal proximity is required to permit the inference'") (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010)).  Indeed, the evidence of temporal proximity is particularly weak in Plaintiff's case, considering that he had filed numerous complaints and grievances regarding the disposition of his property over the course of at least seven months before he was transferred.  For the foregoing reasons, therefore, Plaintiff's allegations regarding the prison transfer are insufficient to state a plausible retaliation claim.

## F.  Conspiracy

Plaintiff further alleges that Defendants acted in concert or in conspiracy with one another to violate Plaintiff's rights.  To state a claim for conspiracy, a plaintiff must plead with

particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan*, No. 94–2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996).

Plaintiff has not alleged a sufficient basis for inferring an agreement between the alleged conspirators to violate Plaintiff's rights. As the Supreme Court has stated, allegations hinting at a "possibility" of conspiracy, but lacking "enough factual matter (taken as true) to suggest that an agreement was made," are insufficient to state a claim. *See Twombly*, 550 U.S. at 556. As evidence of agreement, Plaintiff refers to Lewis's administrative hearing report, in which she indicated to Defendant Baker: "Once you have asked the prisoner whether he wants [the guitar] mailed at his expense or up on a visit for no more than 30 days, we will put in here what he does say as you and I just discussed on the phone." (Compl., Ex. 1, Page ID#62.) At most, the foregoing

statement indicates that Baker and Lewis agreed to document Plaintiff's intentions regarding the guitar; it does not even remotely suggest that Defendants agreed to violate Plaintiff's rights. Plaintiff, therefore, fails to state a plausible conspiracy claim against Defendants.[12]

### G.    Respondeat Superior

The Court has determined that Plaintiff does not stated a claim based on the conduct of Defendants Berghuis, Armstrong, Chaffee and "John Doe."  To the extent Plaintiff sues any of the foregoing Defendants merely because of their supervisory role over, or failure to act in response to, the conduct of other Defendants, his claim must fail.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee*, 199 F.3d at 300.

### Conclusion

---

[12]Because he fails to state a conspiracy claim, he also fails to state claims under 42 U.S.C. § 1985 (requiring a showing of a conspiracy) and § 1986 (requiring knowledge of a violation under § 1985).

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants  Berghuis, Armstrong, Chaffee and "John Doe" will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Baker, Lewis and Minnerick.

An Order consistent with this Opinion will be entered.

Dated:   November 4, 2011          /s/ Paul L. Maloney
                                   Paul L. Maloney
                                   Chief United States District Judge

- 21 -