UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

THOMAS PAUL HULL,

                Plaintiff,                     Case No. 1:11-cv-623

v.                                         Honorable Paul L. Maloney

UNKNOWN BAKER et al.,

                Defendants.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.  On November 4, 2011, the Court reviewed Plaintiff's complaint in accordance with the Prison Litigation Reform Act, and entered an opinion and order dismissing Plaintiff's action, in part, for failure to state a claim (docket ##5-6).  Before the Court is Plaintiff's motion to alter or amend judgment and/or for reconsideration of the Court's opinion (docket #14).   In his motion, Plaintiff objects to the dismissal of his claims.  For the reasons that follow, Plaintiff's motion will be denied.

### Discussion

      I.     Reconsideration

       Plaintiff brings his motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Rule 7.4(a) of the Local Rules for the Western District of Michigan.  Rule 59(e) allows a party to move the Court to alter or amend its "judgment."  FED. R. CIV. P. 59(e).  Rule 59(e) does not apply in these circumstances because no judgment has been entered.  On the other hand,

Rule 7.4(a) of the Court's local rules allows a party to seek reconsideration of any of the Court's orders.  Under that rule, reconsideration is appropriate only when the movant "demonstrate[s] a palpable defect by which the Court and the parties have been misled . . . [and] that a different disposition must result from a correction thereof."  W.D. Mich. LCivR 7.4(a).

### A.     Pleading standards

First, Plaintiff argues that the Court improperly applied the pleading standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  Plaintiff contends that *Twombly* and *Iqbal* do not apply because he is proceeding *pro se* as a prisoner.  Contrary to Plaintiff's assertion, the *Twombly/Iqbal* standard applies to review of prisoner complaints under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i).  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  While the Court must liberally construe Plaintiff's complaint because he is proceeding *pro se*, so construed, it must satisfy the pleading standard set forth in *Twombly/Iqbal*.  Thus, the Court did not err in applying that standard.

### B.     Due process

In one of the claims dismissed by the Court, Plaintiff alleged that Defendants failed to provide adequate process when they confiscated and disposed of his guitar and guitar accessories.  Defendant Baker initially confiscated Plaintiff's guitar because he believed it was contraband.[1]  Defendant Lewis subsequently held an administrative hearing on the matter.  Plaintiff was given an opportunity to present evidence in support of his claim to the guitar, but Lewis determined that the evidence presented was either irrelevant to the guitar at issue or not credible.  At another hearing,

---

[1]Contraband is any property that the prisoner is not authorized to possess, including property that has been altered, obtained from an unauthorized source, belongs to another prisoner, or exceeds the limits allowed by policy. MDOC Policy Directive 04.07.112 ¶ EE (11/15/2004).

Lewis determined that Plaintiff would not be permitted to possess guitar accessories because he did not own a guitar.  This Court dismissed the due process claim on the following alternate grounds: (1) Plaintiff's pleadings indicate that he received the process to which he was due; and (2) even if Plaintiff did not receive adequate process, he fails to state a claim because he did not plead the inadequacy of post-deprivation proceedings, as required by *Parratt v. Taylor*, 451 U.S. 527 (1981).

### 1.    Adequacy of process

As the Court indicated in its opinion, the process received by Plaintiff satisfied the basic due process requirements set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974) for prison disciplinary hearings, which include:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67).  Plaintiff argues that the Court inappropriately deferred to the findings of the hearing officer, which are set forth in the hearing report attached to the complaint; however, the Court quoted the hearing officer's statements merely to show the process that Plaintiff received.  The validity of those findings is not at issue.  *See Martinez v. California*, 444 U.S. 277, 284 n.9 (1980) (noting that "even if a state decision does deprive an individual of life or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated the individual's right to due process").  In other words, the Court did not, and did not need to, defer to the hearing officer's findings to evaluate Plaintiff's due-process claim.

In addition, Plaintiff argues that the process he received was deficient because he bore the burden of proof to show that his guitar was not contraband. In support of his argument, he points to a statement in the hearing report that Plaintiff "cannot prove ownership" of the guitar. (*See* MDOC Administrative Hr'g Rep. (02/26/2008), docket #1-1, Page ID#62.) Due process may prohibit prison officials from confiscating property in the absence of *any* evidence of wrongdoing. *See Hill*, 472 U.S. at 455 ("[T]he Court has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence."); *McClendon v. Rosetti*, 460 F.2d 111, 115 (2d Cir. 1972) ("It seems plain enough that absent evidence of unlawful conduct, criminal sanctions may not be imposed, nor property forfeited[.]" (citations omitted)). In Plaintiff's case, however, Defendants had some evidence that Plaintiff was not authorized to possess the guitar. In his pre-hearing statement, Sgt. Baker reports:

> On 2-25-08 prisoner Hull brought a red electric guitar to the property room as he had submitted an order for replacement strings, picks, and a shoulder strap. . . .
>
> On 7-18-06 Prisoner Sowders was upgraded from level 2 to level 4 and had in his possession 2 electric guitars. Prisoner Sowders agreed to have one of the guitars (which was painted blue and had skulls and other items painted on it) to be turned over to the facility to be destroyed. Prisoner Sowders said the guitar was payment for a debt owed by another prisoner but would not identify who the prisoner was. The guitar had a prisoner number sanded out of it and So[w]ders had put his number on the guitar. . . .
>
> Prisoner Hull contacted ADW Depifanio claiming the guitar was his, she agreed not to destroy the guitar for 30 days to allow Hull to provide proof of ownership. On 8-14-06 prisoner Hull wrote ADW Depifanio a letter explaining he could not produce the proof she required. Her response was that the guitar was contraband and would be destroyed; this was done by me on 10-20-06.

> When asked where he had gotten the red guitar in question [Hull]
> claimed that it was the blue guitar that was confiscated from Sowders
> on 7-18-06, and he had removed the blue paint and the skulls from it.
> This would not be possible as that guitar was destroyed by me on 10-
> 20-06.

(Docket #1-1, Page ID#46.)  In other words, Plaintiff apparently lied to Baker about where he had

obtained the guitar.  In setting forth her reasons for the contraband finding, Lewis noted that the

guitar itself supported Baker's suspicions that Plaintiff was not authorized to possess it:

> The guitar is contraband and the prisoner will not be allowed to
> possess it.  Prisoner HULL 237801 cannot prove ownership of 1 red
> guitar (no brand name).  Although the guitar has Hull's prisoner
> number scratched on it, it is clear and it has been verified by SGT
> Baker that property staff regularly engrave property; it is impossible
> that the number was put on this guitar by staff.
> . . .

(*Id.* at Page ID#62.)  Thus, while Plaintiff did bear a burden to respond to the charge, that burden did

not violate his right to due process.  *See Hill*, 472 U.S. at 455 (holding that "some evidence" of guilt

is sufficient to satisfy due process in prison disciplinary proceedings).  To the extent Plaintiff

disagrees with the merits of Lewis's findings or her assessment of the evidence, he does not state a

due-process claim.

Plaintiff also contends that he did not receive adequate notice because Lewis made

her decision, in part, based on information that was not presented at the hearing.  For instance,

Plaintiff explained that he received the guitar over the front desk at another facility (Prisoner's

Response to Sgt. Baker's N.O.I., docket #1-1, Page ID#53), but Lewis reported that she spoke with

an employee from that facility and confirmed that musical instruments were not accepted at that

facility in that manner.  Plaintiff also presented a property receipt for the guitar (docket #1-1, Page

ID#56), but Lewis determined that the receipt appeared to have been forged because that particular

form was revised *after* the date written on the receipt. In addition, Plaintiff noted that the guitar had his prisoner number on it (docket #1-1, Page ID#52), but Lewis determined (after confirmation from Sgt. Baker) that the prisoner number on Plaintiff's guitar was not genuine because it was scratched onto the guitar rather than engraved by prison personnel according to the prison's regular practice (docket #1-1, Page ID#62). Plaintiff erroneously asserts that he was entitled to respond to the foregoing evidence before Lewis made her determination; however, the relevant requirements of due process were satisfied when Plaintiff was given notice of the charge and evidence in support (including Baker's pre-hearing report), a meaningful opportunity to dispute it, and a written statement of the reasons for the decision. The evidence obtained by Lewis after the hearing concerned the credibility of Plaintiff's defense. Due process did not require Defendants to provide Plaintiff a second opportunity to confront the charge by attempting to explain the deficiencies in his own evidence. Consequently, Lewis's reliance on the foregoing evidence did not violate Plaintiff's right to due process.

Plaintiff also contends that Lewis deprived him of due process when she determined that one of his receipts for the guitar appeared to have been forged. He asserts that forgery is a disciplinary violation, but he did not receive notice of forgery charges before the contraband hearing. Plaintiff's argument is frivolous, however, because he does not allege that Defendants charged him with, or disciplined him for, forgery. Lewis's conclusion that Plaintiff appeared to have forged a property receipt did not, by itself, implicate a property or liberty interest protected by the Due Process Clause; thus, she was not required to notify him of that conclusion before the hearing.

Plaintiff also asserts that Lewis failed to determine whether his guitar case and guitar strap were also contraband, but in his complaint Plaintiff alleges that Lewis held another hearing to

determine the disposition of guitar accessories (Compl. ¶ 61); according to the hearing report

attached to the complaint, Lewis determined that Plaintiff would not be permitted to possess guitar

accessories because he did not own a guitar.  (MDOC Administrative Hr'g Rep. (08/26/2008),

docket #1-2, Page ID#109.)

> In addition, Plaintiff argues that Lewis was biased.  In particular, he contends that:
>
> Lewis treated both the evidence and arguments offered by Plaintiff
> Hull at the hearing (Compl. at 24) differently than the charging officer
> Defendant Baker's notice of reasons for the confiscation and
> accusations (id. at 21) suppressed material evidence favorable to
> Plaintiff (Compl. ¶ 25), e.g. proof of ownership receipt for the above
> guitar gig bag/soft case from the vendor Elderly Instruments (id at
> ¶ 24), confiscated by Defendant Baker (Compl. 18 & 20) made false
> and distorted allegations in this hearing report not presented in
> Defendant Baker's contraband charge (id. at 21) nor at the hearing
> and evidently obtained by her ex parte discussions with the charging
> officer Defendant Baker and some "Phantom officer" after the
> hearing (id. at 25 & 27) . . . .

(Mot. for Reconsideration 11, docket #15.)  As indicated, *supra*, Plaintiff's disagreement with how

Lewis "treated the evidence" does not state a due process claim.  Moreover, Plaintiff's contention

that Lewis suppressed evidence favorable to him is unsupported.  Plaintiff refers to a receipt for the

guitar bag, but Plaintiff presented this receipt to Lewis (docket #1-1, Page ID#53), and she

mentioned it in her report (*id.* at Page ID#63).  Lewis could not have suppressed evidence that was

already available to Plaintiff.  Further, Plaintiff's contention that Lewis made false and distorted

allegations is too vague and conclusory to suggest bias.  Finally, the fact that Lewis obtained

statements from other prison officials (including the charging officer) when evaluating Plaintiff's

evidence is not indicative of a lack of impartiality that violates due process.[2]

### 2.       Applicability of *Parratt v. Taylor*

Even assuming Plaintiff did not receive adequate process, the Court held that the

doctrine of *Parratt v. Taylor* would bar his claim.  Plaintiff argues that the *Parratt* doctrine does not

apply because the deprivation of his property was not random and unauthorized; instead, Defendants

were delegated  the authority to effect the deprivation in question.  *See Allen v. Thomas*, 388 F.3d

147, 149 (5th Cir. 2004) ("Conduct is not 'random and unauthorized' for purposes of the

*Parratt/Hudson* doctrine if the state 'delegated to [the defendants] the power and authority to effect

the very deprivation complained of.'") (quoting *Zinermon v. Burch*, 494 U.S. 113, 138 (1990));

*Spruytte v. Walters*, 753 F.2d 498, 509-10 (6th Cir. 1985) (holding that *Parratt* did not apply to a

property-deprivation claim because the deprivation of the plaintiff's property "resulted from

application of a policy directive adopted by the [Michigan] Department of Corrections").  Plaintiff

contends that Defendant Baker was authorized to confiscate the property and that Defendant Lewis

was authorized to dispose of the property following the contraband hearing.

As the Court stated in its opinion, however, *Parratt* applies because Plaintiff alleges

that Defendants violated numerous rules and regulations in connection with the deprivation of his

property.  (*See, e.g.,* Compl. ¶¶ 29, 33, 34, 53; *see also* 11/04/2011 Op. 10-11, docket #5.)  For

---

[2]Plaintiff cites several cases that are distinguishable because the circumstances in those cases are not present in the instant case.  *See Campbell v. Hennan*, 931 F.2d 1212, 1215 (7th Cir. 1991) (prison officials refused to provide or consider exculpatory evidence); *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989) (hearing officer suppressed evidence, distorted testimony, and failed to inform the plaintiff of the evidence against him); *Giano v. Sullivan*, 709 F. Supp. 1209, 1217 (S.D.N.Y. 1989) (hearing officer who found multiple co-defendants guilty of the same charges allowed the charging officer to be present at the disciplinary hearing, to interrupt the plaintiff's testimony, and to remain with the hearing officer outside the plaintiff's presence while the case was being decided).  Finally, another case cited by Plaintiff, *Johnson v. Freeburn*, 144 F. Supp. 2d 817 (E.D. Mich. 2001), does not concern a due-process claim.

instance, in his motion for reconsideration, Plaintiff asserts that he did not receive proper notice before his guitar accessories were confiscated as contraband, and that Defendants Baker and Minnerick fabricated a notice after the fact.  Whatever authority Defendants had in connection with the deprivation of Plaintiff's property, they were not authorized to deprive him of his property in violation of state laws or prison policies.  Thus, if Defendants violated such laws or policies, e.g. by failing to provide adequate notice, fabricating a notice, or otherwise, then *Parratt* applies.  *See Garrison v. Walters*, 18 F. App'x 329, 332 (6th Cir. 2001) ("If an official fails to follow state procedure or conform his conduct to state law, the plaintiff's injury is the result of a random and unauthorized act . . . .").

        Plaintiff further contends that *Parratt* does not apply because he specifically alleged in the complaint that Defendants' conduct was "not random and unauthorized, but . . . deliberate, intentional, the result of MDOC's policy, custom or practices . . . ." (Docket #1, Compl. ¶ 87.)  The foregoing allegation does not save Plaintiff's claim, however, because it is unsupported.  Plaintiff does not identify an established MDOC custom or procedure that violates due process;[3] he merely alleges specific instances in which he was deprived of property, and then claims that these instances reflect established policies of the MDOC.  Such conclusory allegations are not sufficient to state a plausible claim.  Moreover, Plaintiff's assertion is somewhat contrary to his allegation that the deprivation of his property was "maliciously and subjectively motivated by" Defendants' desire to "retaliate" against Plaintiff for exercising his First Amendment rights.  (Compl. ¶ 87.)  Thus,

_____

    [3]Plaintiff refers throughout the complaint to an established custom, policy, or practice of MDOC officials to practice a "code of silence" to cover up their co-workers' violations of prisoners' civil rights.  (*See, e.g.*, Compl. ¶ 32.) But even assuming such a policy or practice exists, it did not cause the violation of Plaintiff's due-process rights; at best, it allowed the deprivation to continue.

Plaintiff's objection is without merit; *Parratt* applies to his claim.  Because Plaintiff failed to plead

that state remedies are inadequate, therefore, he does not state a due-process claim.  *See Copeland*

*v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995) ("The Sixth Circuit has squarely held that the appeal

of administrative decisions to the [Michigan] state circuit court provides an adequate remedy for

violations of due process for purposes of *Parratt v. Taylor*.").

### B.      Prison grievances

The Court also dismissed Plaintiff's claim that Defendants violated his constitutional

rights by placing him on modified grievance access and/or by denying his grievances.  Plaintiff

argues that Defendants' actions violated his First Amendment right to petition the government for

redress of grievances, though as the Court indicated in its opinion, prisoners do not have a

constitutional right to an effective grievance procedure.  (11/04/2011 Op. at 13, docket #5, Page

ID#161.)  Moreover, the Court finds no error in its determination that Plaintiff's placement on

modified grievance access or the denial of his grievances would not deter a person of ordinary

firmness from engaging in protected conduct.

### C.      Equal Protection

Plaintiff also objects to dismissal of his equal protection claim.  The Court dismissed

this claim because Plaintiff's allegations are merely conclusory.  Plaintiff alleges that Defendants

discriminated against him, but he failed to identify any similarly-situated prisoners who were treated

differently from him.[4]  In his motion, Plaintiff refers to allegations in his complaint that Defendant

---

[4]Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies to Plaintiff's claim. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006). Thus, to state a claim, Plaintiff must allege that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Minnerick rejected his grievance appeal from the administrative hearing as duplicative, even though "an [a]ppeal from this type of Administrative Hearing was equally available to similarly situated prisoners as set forth in [Mich.] Administrative Rule 791.3320." (Compl. ¶ 67.)  The mere fact that Minnerick rejected Plaintiff's grievance does not, in itself, mean that Plaintiff was treated differently from other prisoners, however.  Moreover, it does not mean that an appeal from the administrative hearing was not "available" to Plaintiff.  According to Plaintiff's exhibits, Plaintiff could, and did, appeal Minnerick's decision to the next step of the grievance process (docket #1-1, Page ID##69-70).  In addition, state law allows a prisoner to appeal an administrative hearing decision to state court, provided that the prisoner has exhausted available remedies.  *See* Mich. Comp. Laws § 791.255(2).

Plaintiff also alleges that Lewis treated Plaintiff differently by putting the burden of proof on him at the contraband hearing, and by preventing him from commenting on the evidence that she obtained following the hearing.  Assuming Plaintiff correctly describes Lewis's conduct, however, there is no indication that prison officials treated Plaintiff differently from other, similarly-situated individuals, in these respects.[5]  Plaintiff contends that because Defendants failed to follow state law and/or policies with respect to the disposition of his property, it can reasonably be inferred that Defendants treated other prisoners differently.  If such allegations were sufficient to state an equal-protection claim, however, then every violation of state law or procedure would give rise to

---

[5]Plaintiff refers to a 1998 prison memo stating that prison officials bear the burden of proof to show that property taken from prisoners "as a result of the Bolden process" was not lawfully acquired.  (Docket #1-1, Page ID##74-75.)  Plaintiff does not contend, however, that his property was taken as a result of the "Bolden process." Another memo from 1997 indicates that fair contraband hearings should allow a prisoner to "know and comment on the evidence being presented[,]" including the statement of a prison official and the property at issue. (*Id.* at Page ID#77.) There is no dispute, however, that Plaintiff received Baker's pre-hearing report, had access to the property at issue, and had an opportunity to comment on them in connection with the hearing. (*See* Prisoner Response to Sgt. Baker's N.O.I., docket #1-1, Page ID#52.)  Neither the 1997 memo, nor due process, require that prisoners have an opportunity to comment on the results of the hearing officer's evaluation of the prisoner's evidence before a determination is made.

a constitutional claim.

The cases cited by Plaintiff in support of his argument illustrate the deficiency in his pleadings.  In each of the cited cases, the plaintiffs identified other, similarly-situated individuals who were treated differently.  *See Williams v. Lane*, 851 F.2d 867, 873 (7th Cir. 1988) (prisoners in protective custody alleged that other inmates–those in the general prison population–received more programs and services); *Sturm v. Clark*, 835 F.2d 1009, 1010-11 (3d Cir. 1987) (attorney alleged that prison officials restricted her prison visits to a specific schedule that did not apply to any other attorneys); *Klein v. Pyle*, 767 F. Supp. 215, 218 (D. Colo. 1991) (prisoner alleged that other prisoners with similar sentences were not moved to a higher  security prison, as he was).  In short, the facts alleged by Plaintiff do not indicate that he was subject to disparate treatment, much less purposeful discrimination, by any Defendant.

Plaintiff also argues that because he is a prisoner, it is unfair to require him to plead additional facts in the absence of discovery.  To the contrary, he is not entitled to proceed to discovery based on unsupported speculation that he might uncover evidence of wrongdoing. Instead, he must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Where, as here, the allegations "do not permit the court to infer more than the mere possibility of misconduct," then Plaintiff's claim is subject to dismissal because he has "alleged – but [he] has not 'show[n]' – that [he] is entitled to relief." *Id.* at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

### D.    Retaliation (prison transfer)

The Court also dismissed Plaintiff's claim that he was transferred to another prison in retaliation for filing grievances because the complaint does not indicate how any Defendant was

involved in the transfer, and because the facts alleged do not support a reasonable inference of a

retaliatory motive for the transfer.  Plaintiff apparently does not contest the Court's determination

that he failed to allege personal involvement by any Defendant in his transfer; instead, he argues that

it is unfair to require him to identify the individuals involved.  To the contrary, Plaintiff is not

exempt from basic pleading requirements, including allegations of personal involvement by

Defendants in the conduct at issue.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th

Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002); *cf. Iqbal*, 129 S. Ct. at 1948

("[A] plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution.").  Moreover, for the reasons stated in its previous

opinion, the Court is not persuaded that Plaintiff's allegations are sufficient to support a reasonable

inference of retaliatory intent with respect to the transfer.

### E.      Conspiracy

Plaintiff also objects to dismissal of his conspiracy claim, which the Court dismissed

because Plaintiff failed to allege conduct indicating that Defendants agreed to violate his rights.

Plaintiff contends in his motion, as he did in his complaint, that a statement in the administrative

hearing report indicates that at least Defendants Baker and Lewis conspired with one another.  The

following statement appears in the report under the title "disposition of items, if any":

> PRISONER HULL 237801 WILL NOT BE ALLOWED TO
> POSSES[S] 1 (RED ELECTRIC GUITAR) NO BRANDNAME
> ANYWHERE ON THE GUITAR. Once you have asked the prisoner
> where he wants it mailed at his expense or up on a visit for no more
> than 30 days, we will put in here what he does say as you and I just
> discussed on the phone.

(docket #1-1, Page ID#62.)  The report is signed by Baker as the "Reporting Staff Member" and by

Lewis as the "Hearing Officer."  (*Id.*)  Plaintiff claims that Baker wrote the foregoing statement,

though in its previous opinion the Court assumed that Lewis wrote it.  Regardless of who wrote the

statement, however, the Court affirms its determination that this statement does not suggest an

agreement to violate Plaintiff's rights, as is necessary to state a conspiracy claim; in fact, it suggests

quite the opposite.  No other facts alleged by Plaintiff support a plausible claim that any of the

Defendants conspired to violate Plaintiff's rights.

### F.  Leave to amend

Plaintiff argues that the Court should have granted him leave to amend his complaint

before dismissing it with prejudice.  Under longstanding precedent in this Circuit, the Court does not

have discretion to permit a plaintiff to amend a complaint to avoid *sua sponte* dismissal under the

PLRA, because:

> [u]nder § 1915(e)(2), a court is required to dismiss a case when the
> action satisfies § 1915(e)(2)(A) or § 1915(e)(2)(B). Under the Prison
> Litigation Act, courts have no discretion in permitting a plaintiff to
> amend a complaint to avoid a sua sponte dismissal. If a complaint
> falls within the requirements of § 1915(e)(2) when filed, the district
> court should sua sponte dismiss the complaint. Section 1915A also
> provides for such sua sponte dismissals.

*McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997).  Plaintiff contends that the rule in

*McGore* has been abrogated by the Supreme Court's decision in *Jones v. Bock*, 549 U.S. 199 (2007),

wherein the Court stated that "the PLRA's screening requirement does not–explicitly or

implicitly–justify deviating from the usual procedural practice beyond the departures specified by

the PLRA itself." *Id.* at 213.  Plaintiff argues that leave to amend under Rule 15 of the Federal Rules

of Civil Procedure is part of the usual procedural practice; thus, deviance from that practice is not justified by the PLRA.

Plaintiff's argument is not persuasive.  In *Bock*, the Supreme Court held that it is improper to dismiss a complaint at the screening stage on the basis that the plaintiff has failed to plead exhaustion of administrative remedies.  The "usual procedural practice" referenced by the Court is to treat exhaustion as an affirmative defense rather than a pleading requirement. *Id.*  The Court determined that exhaustion is not a pleading requirement under the PLRA because, among other reasons, it is not "among the enumerated grounds justifying dismissal upon early screening." *Id.*  In contrast, failure to state a claim *is* an enumerated ground justifying dismissal upon early screening. *See* 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1); *see also Bock*, 549 U.S. at 214-15.  In other words, the PLRA explicitly justifies deviating from the usual procedural practice in Rule 15 by allowing *sua sponte* dismissal for failure to state a claim.  Thus, the holding in *Bock* does not in any way undermine the Sixth Circuit's decision in *McGore*.  This Court, therefore, did not err by dismissing some of Plaintiff's claims with prejudice (i.e., without leave to amend the complaint) after it determined that they failed to state a claim.

### Conclusion

For the foregoing reasons, the Court concludes that Plaintiff has not shown that the Court's opinion was in error, or that a different disposition should result.  Therefore, Plaintiff's motion to alter or amend judgment (construed as a motion for reconsideration) will be denied.

An order will be entered that is consistent with this opinion.

Dated: March 27, 2012                          /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               Chief United States District Judge