UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS P. HULL, # 237801,

        Plaintiff,

v.

RONALD BAKER, et al.,

        Defendants.

Case No. 1:11-cv-623

Honorable Paul L. Maloney

**REPORT AND RECOMMENDATION**

      This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff's claims arise from contraband removal proceedings conducted in 2008 at the Earnest C. Brooks Correctional Facility (LRF). The defendants are LRF's Property Room Sergeant Ronald Baker, Assistant Resident Unit Supervisor (ARUS) Djuana Lewis,[1] and Grievance Coordinator Jeffrey Minnerick. Plaintiff alleges that defendants retaliated against him in violation of his First Amendment rights by confiscating a red electric guitar and related music supplies,[2] because he sent a kite (informal complaint) to Sergeant Baker stating that he had not yet received music supplies that he had ordered and because he filed grievances. Plaintiff sues defendants in their individual and official capacities and seeks damages and declaratory and injunctive relief. (Compl. at 32, ID# 33).

---

[1] Djuana Lewis is now known as Djuana Lang. (Def. Brief at 1 n.1, docket # 18). The name Lewis will be used herein for the sake of clarity.

[2] All claims other than the First Amendment retaliation claims were dismissed on November 4, 2011. (*see* docket #s 5, 6).

The matter is before the court on defendants' motion for summary judgment, filed on January 26, 2012. (docket # 17). Plaintiff requested and received an extension of time for filing his response. (docket #s 25, 27). On June 21, 2012, plaintiff filed his response (docket # 28). In his response, plaintiff requested additional time to complete discovery in support of his claims. (*Id.* at i-ii, ID#s 298-99). He asked the court to "defer" a ruling on defendants' motion for summary judgment because he believed that discovery would produce additional evidence supporting his claims. (docket # 28-1, Plf. Decl. ¶¶ 1, 12, 16, 25, 28, 28.1, 30, 34, 52, 55, 56, 58, ID#s 347, 350, 351, 356-58, 360, 367-68). The court has deferred ruling on defendants' motion for an extraordinarily lengthy period, but a decision on defendants' motion cannot be postponed forever. There are no discovery requests pending. Plaintiff has had more than sufficient time to conduct whatever discovery was necessary to support his claims. Defendants' motion for summary judgment is ready for decision.

For the reasons set forth herein, I recommend that plaintiff's claims for declaratory and injunctive relief be dismissed as moot. I further recommend that plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice, because they are barred by Eleventh Amendment immunity. I further recommend that defendants' motion for summary judgment be granted and judgment be entered in defendants' favor on all plaintiff's claims for damages against defendants in their individual capacities.

**Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of

law. FED. R. CIV. P. 56(a); *Gecewicz v. Henry Ford Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463, 467 (6th Cir. 2012).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). FED. R. CIV. P. 56(c)(1). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e)(2), (3); *see Coleman v. Bowerman*, 474 F. App'x 435, 436 (6th Cir. 2012). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Donald v. Sybra, Inc.*, 667 F.3d 757, 760-61 (6th Cir. 2012).

## Proposed Findings of Fact

Plaintiff is an inmate in the custody of the Michigan Department of Corrections (MDOC) serving five life sentences.[3] He is currently an inmate at the Chippewa Correctional Facility (URF). He was an inmate at the Earnest C. Brooks Correctional Facility (LRF) at all times relevant to his claims. The defendants are MDOC employees at LRF: Grievance Coordinator Jeffery Minnerick, Assistant Resident Supervisor (ARUS) Djuana Lewis, and Property Room Sergeant Ronald Baker.

In January 2008, plaintiff mailed an order to a vendor for guitar strings, guitar picks, and a guitar strap. (Compl. ¶¶ 13, 14, ID# 5).[4] On February 28, 2008, plaintiff sent a kite to Sergeant Baker stating that he had not received the items he had ordered in January. (*Id.* ¶ 16, ID# 5). When plaintiff's package arrived, he was instructed to bring the guitar to the property room. MDOC's property policy, for obvious safety reasons, restricts prisoners to one set of installed guitar strings.[5]

---

[3] *See People v. Hull*, No. 176392, 1996 WL 33359104 (Mich. Ct. App. Sept. 17, 1996).

[4] Plaintiff's complaint is verified under penalty of perjury. It is considered as an affidavit in opposition to defendants' motion for summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, "verified" arguments and legal conclusions are not evidence. Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., Inc.*, 357 F. App'x 656, 662 (6th Cir. 2009); *Doe v. Magoffin County Fiscal Ct.*, 174 F. App'x 962, 966 (6th Cir. 2006); *see also Stine v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 550 (6th Cir. 2011) (A "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment.").

[5] Given a guitar string's lethal potential when used as a garrote, it is surprising that the MDOC has allowed any prisoner to possess a guitar. *See e.g., United States v. Bingham*, 653 F.3d 983, 988 (9th Cir. 2011) (prison gang members employed a wire garrote to strangle their victim); *Grizzle v. Horel*, No. C07-4845, 2011 WL 4072535, at * 2 (N.D. Cal Sept 12, 2011). Further, an electric guitar is a ready-made bludgeon. *See e.g., People v. Knoefler*, No. C069326, 2012 WL 3711526, at * 1 (Cal. App. 3d Dist. Aug. 29, 2012) (defendant broke his victim's arm with an electric guitar).

A prisoner seeking to replace guitar strings must bring the instrument to the property room and change the strings under supervision.

On February 25, 2008, plaintiff appeared at the prison's property room carrying a red guitar. Sergeant Baker inquired where plaintiff had obtained this instrument. According to Sergeant Baker, plaintiff indicated that it was the blue guitar that had been confiscated from prisoner Sowders and that plaintiff had removed the blue paint and skulls from it. Baker knew that this statement was false, because in 2006, Baker had personally destroyed Sowders's blue guitar.[6] (docket # 18-2, Baker Aff. ¶¶ 4-6, ID # 241; docket # 18-2, Sowders Property Disposition Sheet, ID# 245). Plaintiff denies making a statement claiming that the red guitar was actually a modified version of the blue guitar. (docket # 28-1, Plf. Decl. ¶ 11, ID# 349). He claims that Baker said, "Didn't I throw away your guitar in [2006] after you had filed a grievance about it. . . . You should know not to cry about property." (Compl. ¶ 18, ID# 5). Further, plaintiff claims that when he asked about the items ordered through the mail, Baker's response was that he was going to keep them. (*Id.*).

Because the ownership of the red electric guitar and related items was in question, Baker confiscated the red guitar, including its strap and case, and issued a Property Disposition Sheet (docket # 1-1, ID# 50; docket # 18-2, ID# 247), a Contraband Removal Record (docket # 1-1, ID# 44; docket # 18-2, ID# 248), and a Notice of Intent to Conduct an Administrative Hearing ( Compl. ¶ 18, ID# 5; docket # 1-1, ID# 45; Baker Aff. ¶ 7, docket # 18-2, ID# 249). Baker issued a Notice of Package/Mail Rejection for the strings, strap, and picks. (docket # 1-1, ID# 108; Baker Aff. ¶¶

---

[6]In 2006, prisoner Sowders had two guitars in his possession and could not keep both when his security classification level was increased. Sowders agreed to have his blue guitar with skulls destroyed. Plaintiff contacted Assistant Deputy Warden D'Epifiano and claimed that the blue guitar was actually his, but plaintiff was unable to prove ownership. On October 20, 2006, Baker destroyed the contraband blue guitar. (docket # 1-1, ID#s 46-48; docket # 18-2, Baker Aff. ¶ 6, ID# 241).

8-9, ID# 242; docket # 18-2, ID# 252). On February 26, 2008, Sergeant Baker wrote a memorandum to ARUS Lewis describing the circumstances under which the suspected contraband guitar and related items had been seized. (docket # 1-1, ID# 46; docket # 18-2, ID# 250).

Plaintiff filed a grievance after Baker had seized the suspected contraband items, but before a contraband removal hearing could be held. On March 13, 2008, grievance coordinator Minnerick received plaintiff's grievance and assigned it Grievance Number LRF 08-03-00297-07B. (docket # 1-1, ID# 35). Plaintiff complained that he had not received the appropriate forms in connection with the confiscation the suspected contraband:

> On 2/25/08, Sgt. Baker confiscated from me: 1 - electric guitar; 1- soft case; 1- strap. At the time of confiscation Sgt. Baker issued me a Property Disposition Sheet" (CAJ-209). As of the above date I have not received ANY further documentation whatsoever, which violates the very principle of due process. U.S. Const. Am. XIV; Mich. Const. 1963, Article 1, section ____.
>
> This action (or lack thereof) by Sgt. Baker is absurdly arbitrary. I have no information regarding Sgt. Baker's intent, other than receiving a completely irrelevant Property Disposition Sheet. PD 04.07.112 para GG indicates "If an item is believed to be contraband, it shall be confiscated and a Contraband Removal Record (CSJ-284) issued to the prisoner. The prisoner also shall be issued either a misconduct report . . . . or a Notice of Intent to Conduct an Administrative Hearing (CSJ-282) . . ." No where! No where, is a Property Disposition Sheet indicated . . . . not to mention being given to the prisoner in place of the above cited documents.
>
> In this instance, delay is denial. LRF-OP 03.08.130-C, page 4, No. 22 states in part "Within 30 days of the Notice of Intent Date (except . . . property related hearings which must be held within 10 business days of notice) . . . .". The problem with this is, I have not even received the "notice", thus the 10 business days for holding a hearing has not started yet. Whichever particular type of notice I am given, there are prescribed time limits governing that hearing. However, by not being given notice, Sgt. Baker is subverting the very principles behind the established time limits and due process.
>
> Simply put . . . it has been 16 total days since my property was confiscated, and I have not received any notice establishing why. This is an absolute actionable due process violation.

(docket # 1-1, ID#s 35-36). Plaintiff claims that when Grievance Coordinator Minnerick reviewed this grievance with him on March 14, 2008, Minnerick said: "You know thats [sic] why this whole thing started . . . because you sent Baker a kite complaining about not being called out to get that property." Minnerick purportedly said, "If you want any chance of getting your guitar back you better not complain or file any more grievances like this." (Compl. ¶ 20, ID# 6).

On March 25, 2008, ARUS Lewis conducted the contraband removal hearing. (Compl. ¶ 24, ID# 7; docket # 18-3, Lewis Aff. ¶ 7, ID# 259). Plaintiff denied making the statements Sergeant Baker attributed to him. Plaintiff claimed that his mother had purchased the guitar for him while he had been an inmate at SMI, that it "came in across the front desk in 1994," and that he had painted the guitar with some blue paint, but later washed it off. (docket # 1-1, ID# 62; docket # 18-2, ID# 254). Defendant Lewis found that the proof of ownership plaintiff offered was a forgery. The document, purportedly created in 1994, was written on a MDOC form that did not exist until 1996:

> The guitar is contraband and the prisoner will not be allowed to possess it. Prisoner HULL 237801 can not prove ownership of 1 red guitar (no brand name). Although the guitar has Hull's prisoner number scratched on it, it is clear and it has been verified by SGT Baker that property staff regularly engrave property; it is impossible that the number was put on this guitar by staff. Hull 237801 claims that he got the guitar when he was at SMI (which no longer exists) across the Front Desk in 1994. According to the Property Room Officer at Southern MI. Correctional Facility, (previously SMI) who worked there also in 1994, musical instruments were never accepted over the Front Desk. Further, the prisoner provided a forged Prisoner Receipt (CSJ-234) as proof of ownership. The revision date on this form was 10/96 so it could not have been used to receipt any kind of property in 1994. The document the prisoner presented had the printed revision date torn off. Even if this guitar had actually been allowed in any facility, the value is clearly over $50 and in violation of PD-04.07.112, Prisoner Personal Property. This prisoner also has a documented similar history per a previous in-depth investigation and two other guitars when ownership also could not be proven. The other documents provided by the prisoner, specifically a packing slip from a vendor, Elderly Instruments dated 2/2/99; an illegible Disbursement Authorization from 2001; a Disposition of Property Received form without legible staff signature allegedly from

1994; a Memorandum from Music Coordinator K. Wells dated 10/24/04 are all deemed irrelevant as none of them reference the specific guitar confiscated by Sgt. Baker on 2/25/08 at the Property Room at the Earnest C. Brooks Correctional Facility (LRF).

(docket # 1-1, ID#s 62-63; docket # 18-2, ID#s 254-55; docket # 18-3, Lewis Aff. ¶¶ 6-9, ID#s 259-60; docket # 18-3, ID# 269). The disposition was that plaintiff would not be allowed to possess the guitar. He would be asked whether he would like it mailed at his expense or given up to a visitor. It would be held for 30 days. (docket # 18-2, ID# 254).

On April 17, 2008, Grievance No. LRF 08-03-00297-07B was denied. (docket # 1-1, ID# 39). The Step I response noted that there was no basis for disturbing the result of the administrative hearing.[7] Further, plaintiff had refused to provide the hearing officer with his choice for disposition of the contraband property. Thus, all the contraband items would be destroyed once the grievance process was exhausted. (*Id.*). On April 17, 2008, plaintiff wrote a letter to ARUS Lewis asking that the red guitar and related items be sent to a member of plaintiff's family. (docket # 1-1, ID# 79). On April 20, 2008, plaintiff filed his Step II grievance appeal. (docket # 1-1, ID# 40). On May 1, 2008, the warden denied plaintiff's Step II appeal. (docket # 1-1, ID#s 40-41). The warden determined that plaintiff's claim that he had not received proper notice of the hearing was unfounded. Further, she noted that plaintiff's introduction of forged documents contributed to the length of time it took to complete the investigation. (docket # 1-1, ID# 41). On June 25, 2008, the Grievance and Appeals Section denied plaintiff's Step III appeal. (*Id.* at ID# 43).

Plaintiff states that on July 8, 2008, Sergeant Baker informed him that the guitar, case, and guitar strap had been destroyed. Baker advised plaintiff that the items ordered from Musician's

---

[7]Plaintiff filed other grievances objecting to the hearing officer's decision regarding the disposition of the guitar, which were rejected at Step I as duplicative and upheld on that basis at Steps II and III of the MDOC's grievance process. (docket # 1-1, ID#s 64-73, 80-95).

Friend would need to be sent out of the prison. When plaintiff demanded that the items be sent back to the vendor for a refund, Baker replied that the vendor would not take back items more than 45 days after purchase. When plaintiff asked Baker to give him the property, Baker refused. (Compl. ¶ 48, ID#s 15-16; docket # 1-2, ID#s 96-98). Plaintiff filed a grievance against Baker which was rejected at Step I as duplicative and upheld on that basis at Steps II and III of the grievance process. (docket # 1-1, ID#s 99-102).

On August 26, 2008, Lewis conducted a hearing on the mail rejection. (Compl. ¶ 61, ID# 19; docket # 18-3, Lewis Aff. ¶ 10, ID# 260). Lewis found that "Per 04.04.112 Prisoner personal property Prisoners are not allowed to possession [sic] guitar accessories when they do not own a guitar." Prisoner Hull did not own a guitar and would not be allowed to possess the guitar accessories. Plaintiff was again informed that he could have the items mailed out of the institution at his expense or given to a visitor. After 30 days, the property would be deemed abandoned and destroyed pursuant to PD 04.07.112. (docket # 1-1, ID# 62; docket # 1-2, ID# 109; docket # 18-2, ID# 256; Lewis Aff. ¶ 11, ID# 260). Plaintiff's efforts to have the hearing officer's decision overturned through the MDOC's grievance process proved unsuccessful. (docket # 1-1, ID#s 107, 110-11, 119-21). Lewis, Minnerick, and Baker would have taken the same action regardless of any protected activity by plaintiff. (docket # 18-1, Minnerick Aff. ¶ 7, ID# 238; docket # 18-2, Baker Aff. ¶ 10, ID# 242; docket # 18-3, Lewis Aff. ¶ 12, ID# 260).

On June 14, 2011, plaintiff filed this lawsuit.

**Discussion**

1. **Mootness**

Plaintiff is an inmate at the Chippewa Correctional Facility (URF). Defendants are employed by the State of Michigan at LRF. Plaintiff's requests for injunctive and declaratory relief are moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

2. **Eleventh Amendment Immunity**

All plaintiff's claims for damages against defendants in their official capacities are barred by Eleventh Amendment immunity.[8] The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012). Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Defendants are entitled to dismissal with prejudice of all plaintiff's claims for monetary damages against them in their official capacities.

---

[8] Plaintiff states in his brief that he "is only suing the defendants[] in their official capacities for declaratory and injunctive relief." (Plf. Brief at 40, docket # 28, ID # 340). Thus, all his claims for damages against defendants in their official capacities could also be dismissed on the alternative ground that plaintiff has abandoned such claims.

### 3. First Amendment

On summary judgment, a plaintiff asserting a First Amendment retaliation[9] claim must present proof on which a reasonable trier of fact could find (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). The plaintiff has the burden of proof on all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

"The first element [plaintiff] must establish for his retaliation claim[s] [are] that he was engaged in conduct protected by the First Amendment." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). The Sixth Circuit has never recognized informal kites as protected conduct, and it is unlikely that the Court of Appeals would do so given the extraordinary level of federal court involvement in the day-to-day operation of prisons and waste of judicial resources such recognition would entail. *See Sandin v. Connor*, 515 U.S. 472, 482 (1995). By contrast, the Sixth Circuit has long recognized that a Michigan prisoner's filing of a formal written grievance under the MDOC's grievance process can constitute protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Frivolous grievances are not protected conduct. *See Hill v. Lappin*, 630 F.3d at 472; *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (calling a hearing officer a "foul and corrupted bitch" was not protected conduct); *Herron v. Harrison*, 203 F.3d at 415. I will assume for present purposes that one or more of plaintiff's grievances were not frivolous.

---

[9]"Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

The second element of a retaliation claim is an adverse action against plaintiff that would deter a person of ordinary firmness from engaging in the protected conduct. "[R]outine inconveniences of prison life [] do not constitute adverse action." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011). Prisoners have no right to possess contraband. Depriving plaintiff of a guitar and related items was not an action that would deter a person of ordinary firmness.

Under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue. "The third element of a First Amendment retaliation claim requires the plaintiff to prove a causal connection between the protected conduct and the adverse action. When assessing motive in the context of a summary judgment motion, bare allegations of malice do not suffice to establish a constitutional claim. This court has held that circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399-400 (6th Cir. 2010) (internal quotations and citations omitted). Plaintiff must demonstrate that his protected speech was a substantial or motivating factor in the adverse action taken by defendant. Specifically, plaintiff must point to specific, nonconclusory evidence reasonably linking his speech to the adverse action. *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). The Sixth Circuit has interpreted this inquiry to mean that a motivating factor is "essentially but-for cause-without which the action being challenged simply would not have been taken." *Vereecke*, 609 F.3d at 400 (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007), and *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002)). "Substantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke*, 609 F.3d at 400; *see Tuttle v.*

*Metropolitan Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity standing alone, is insufficient to establish a causal connection for a retaliation claim.").

Plaintiff has not presented evidence sufficient to support a causal connection between his protected conduct and defendants' actions. No rational trier of fact, faced with plaintiff's obvious efforts to circumvent prison regulations through deception and forgery, could ever conclude that the officers' actions were motivated by retaliatory intent, rather than a good-faith effort to enforce necessary prison rules. Further, defendants have shown that they would have taken the same actions if plaintiff had not filed grievances. Defendants are entitled to judgment in their favor as a matter of law on all plaintiff's First Amendment claims.

**Recommended Disposition**

For the foregoing reasons, I recommend that plaintiff's claims for injunctive and declaratory relief be dismissed because they are moot. I further recommend that plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I further recommend that defendants' motion for summary judgment (docket # 17) be granted, and that a judgment be entered in defendants' favor on all plaintiff's claims for damages against defendants in their individual capacities.

Dated: March 27, 2013         /s/ Joseph G. Scoville
                              United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file

timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).